CV 05 4701

ORIGINAL

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
EUGENIA SPENCER,

                              COMPLAINT
                              JURY TRIAL DEMANDED

                      Plaintiff

                                     FILED
  -Against-                        IN CLERK'S OFFICE
                 GARAUFIS, J. DISTRICT COURT E.D.N.Y.

THE DEPARTMENT OF EDUCATION OF THE CITY
OF NEW YORK, UNITED FEDERATION OF         OCT 05 2005
TEACHERS, ILYSSA MANDELL, *in her individual*
*capacity,* JAMES E. PHILEMY, *in his individual*    ★ BROOKLYN OFFICE ★
*capacity,*
                           GOLD, M.J.
                       Defendants
------------------------------------------------------------------X

       Plaintiff, EUGENIA SPENCER, by her attorneys, LAW OFFICES OF AMBROSE

WOTORSON, alleges as follows:

    I.     INTRODUCTION

    1.     This is an action brought pursuant to 42 U.S.C. Section 1983 to vindicate the civil

rights of plaintiff. Plaintiff contends that defendants altered the terms, conditions, and privileges

of her municipal employment in violation of her due process, equal protection, and liberty

interest rights.

    II.    JURISDICTION

    2.     This Court has jurisdiction over this action under 42 U.S.C. Sections 1983. Venue

is proper, as the operative events occurred within this judicial district.

    III.    PARTIES

    3.     EUGENIA SPENCER (hereinafter, "plaintiff") who resides in Queens County,

New York, hereby sues in on her own behalf.

4.      THE DEPARTMENT OF EDUCATION OF CITY OF NEW YORK,

(hereinafter, "municipal defendant") is a state actor for 42 U.S.C. Section 1983 purposes.

Defendant may sue and be sued, and its principle place of business is in Kings County, New

York and defendant's address is 65 Court Street, Brooklyn, New York 11201. At all relevant

times, THE DEPARTMENT OF EDUCATION OF CITY OF NEW YORK employed plaintiff

as a Special Education/Mathematics Teacher. It is herein being sued for having violated

plaintiff's civil rights while acting under color of state law and/or acting pursuant to its own

practices, customs and policies.

5.      At all relevant times, the UNITED FEDERATION OF TEACHERS (hereinafter,

"UFT") served as plaintiff's collecting bargaining unit. Its principal place of business is 52

Broadway, New York, New York and it may sue and be sued.

6.      Defendant, ILYSSA MANDELL, *in her individual capacity*, at all relevant times,

was employed by municipal defendant as an Interim Acting Assistant Principal with municipal

defendant. She is sued in her individual capacity for violating plaintiff's protected civil rights

while acting under color of state law and/or acting pursuant to practices, customs and policies of

municipal defendant.

7.      Defendant, JAMES PHILEMY, *in his individual capacity*, at all relevant times,

was employed by municipal defendant as a Principal with municipal defendant. He is sued in his

individual capacity for violating plaintiff's protected civil rights while acting under color of state

law and/or acting pursuant to practices, customs and policies of municipal defendant.

IV.     FACTUAL AVERMENTS

8.      Plaintiff has been employed by municipal defendant, DEPARTMENT OF

EDUCATION OF THE CITY OF NEW YORK for about five (5) years.

9.      In light of a collective bargaining agreement which mandates that plaintiff cannot
be subjected to adverse employment actions without a showing of just cause, and in light of New
York Civil Service Law, plaintiff had a protected property interest in her job and position.
However, state remedies are wholly inadequate as a matter of law in light of municipal, custom,
practice and policy.

10.      Plaintiff's performance has been fully satisfactory at all relevant times.

11.      However, the terms, conditions, and privileges of plaintiff's municipal
employment have been adversely affected and her rights were violated in the following ways:

a.      Plaintiff was hired on November 24, 2003, to fill a special education/math
vacancy. She had been working with the Department of Education since October
2003 as a teacher for the grades K through 7. Three previous teachers hired for the
position left that position.

b.      On or around the December 1, 2003, a male student, who was 14 ½ years old and
in 7th grade, began bumping into plaintiff, falling onto her, and rubbing his
genitals against her while passing. He did this on at least four different occasions.
He also began referring to plaintiff as his "wife."[1] On December 19, 2003 and on
three additional occasions, plaintiff verbally reported these incidents to her
supervisor, Interim Acting Assistant Principal, Illysa Mandell. Mandell
inappropriately responded that the male student had "a crush" on plaintiff.
Plaintiff protested that "a crush" was one thing, but rubbing up against her and
calling her his "wife" was another. Mandell then recommended that plaintiff
"confront" the student about his behavior, and continue to write up incident

---

[1] On information and belief, the male student weighed approximately 170 lbs and was 6'1" at all relevant
times.

reports if it continued.

c.  On December 22, 2003, plaintiff – as instructed -- spoke directly to the male student about his behavior and warned him that he could be suspended, and possibly, arrested. Later, the male student admitted to stealing plaintiff's wallet

d.  Indeed, on December 26, 2003, the student and his mother took plaintiff to a location where the wallet was hidden on the school campus grounds. However, plaintiff's driver's license and other items were still missing and plaintiff promptly reported the theft and the male student's previous offensive touching of her to the New York City Police Department.

e.  On January 5, 2004, plaintiff reported the theft of her wallet to the school administration. The male student was suspended for five days for the theft of the wallet. After serving his five days suspension, the male student returned to plaintiff's class.

f.  Thereafter, plaintiff was subjected to unwarranted micro-management. For example, on January 6, 2004, the principal, James Philemy, came into plaintiff's classroom to observe her teaching for one period. Prior to this date, such visits were rare and with little or no feedback.

g.  On or about January 14, 2004, the Interim Acting Assistant Principal, Illysa Mandell, came to plaintiff's 1st period class for about twenty minutes to observe her.

h.  On or about January 20, 2004, Philemy told plaintiff that he would be coming in to model a lesson for plaintiff so that she could have a most successful formal evaluation. During this meeting, he did not say or imply that there was anything

unsatisfactory about this lesson.

i.      On January 27, 2004, Mandell came to observe plaintiff's first period, once again.

j.      On January 28, 2004, Ms. Rivman, plaintiff's co-teacher, had to call security because the male student's behavior was unruly and violent. Yet, shortly afterwards, Mandell came back into the classroom angrily stated, in front of plaintiff's class, that "school protocol is to call [her], and not security."

k.      On February 2, 2004, plaintiff received an unsatisfactory grade for the observation on January 6, 2004. Plaintiff had never received an unsatisfactory rating before.

l.      On or about February 11, 2004, Mandell came to plaintiff's classroom with the unruly male student. Mandell stayed and observed plaintiff's lesson for approximately twenty minutes.

m.      On or about February 21, 2004, plaintiff called Mandell because the male student was refusing to follow instructions and was cursing at her. When Mandell arrived, she asked plaintiff, inappropriately, "what did you do?" Plaintiff protested that the male student had been unruly and violent. Mandell then instructed plaintiff to complete a student removal form to get the student temporarily removed from her class.

n.      Between February 10, 2004 and March 8, 2004, the student in question was suspended for making bomb threats against the school, and for assaulting another student.

o.      On or about the week of March 21, 2004, plaintiff received a restraining order against the unruly male student, and the student was finally removed permanently

from plaintiff's class.

p.     On March 30, 2004, Mandell visited plaintiff's first period class. Plaintiff later received a letter of reprimand for "not being actively engaged in the lesson."

q.     On April 14, 2004, the principal, Philemy, assured plaintiff that just because she got a "U" rating for her formal observation, it did not mean that she would receive a "U" at the end of the year.

r.     On April 14, 2004, plaintiff received a memo from Mandell stating that plaintiff's bulletin board was "far below the standards," and that its completion had been untimely.

s.     On April 19, 2004, the principal, Philemy, came to observe plaintiff's class, during the seventh period, yet again.

t.     On or about April 21, 2004 or April 22, 2004, the principal, Philemy, told plaintiff that his most recent observation was "terribly unsatisfactory." When plaintiff stated that she disagreed, Philemy threatened plaintiff, telling her that her tone was disrespectful and that she had better "watch out," because he was her rating officer.

u.     On April 27, 2004, plaintiff was accused of purposely not signing a letter that had been sent around to all teachers of a particular student. However, other seventh grade teachers reported that there was never any such letter sent around.

v.     On May 3, 2004, plaintiff requested that the UFT chapter leader, Joyce Schwartz accompany her to a meeting due to the tone and reprimands that plaintiff had received from prior meetings.

w.     On May 6, 2004, plaintiff received a letter from Mandell dated May 5, 2004

reprimanding her for her "aggressive" tone and telling plaintiff that she is

supposed to work far beyond 3:00 p.m., and that plaintiff could receive an end of

year unsatisfactory rating, or be terminated as a teacher.

x.     On May 11, 2004, the principal, Philemy sent a disciplinary letter to plaintiff,

accusing her of not being able to justify grades that she had given to a particular

student.

y.     On May 14, 2004, plaintiff grieved Mandell's May 5, 2004 letter which accused

her of having an "aggressive" tone, and Philemy's May 11, 2004 letter which

accused her of not being able to justify certain grades. After the grievance's 2nd

Step hearing, Mandell's letter was changed to a mere "Counseling Memo" and

Philemy's letter was pulled from plaintiff's personnel file. Clearly, the letters

were pretextual efforts to justify contemplated adverse employment actions

against plaintiff.

z.     On June 11, 2004, plaintiff filed grievances for lack of staff development, against

another pretextual and false disciplinary letter and against Philemy's failure to

comply with Articles 9 and 10 of the contract.

aa.    On or about June 17, 2004, plaintiff received fifteen "U" ratings for various job

elements and an overall "U" rating without any substantiation. As a result of this

overall "U" rating, plaintiff was unable to obtain employment because her

teaching license was not renewed. But for this "U" rating, plaintiff's teaching

license would have been renewed.

bb.    On June 3, 2005, the Department of Education denied a grievance that plaintiff

had filed, claiming that she was subjected to unsafe conditions because of the

unruly male student. The opinion claimed that plaintiff failed to fill out incident

report forms for assault. In fact, plaintiff did complete and submit a form listing

about four (4) incidents and gave it to her union, the UFT.

cc.    Plaintiff also learned that additional grievances she filed were denied, though she

was never informed of any first step hearings. Joyce Schwartz, of plaintiff's

union, claimed that she gave the copies of the proposed grievances to Lowell

Wayne, another union official. However, Mr. Wayne never returned plaintiff's

numerous calls, nor would he meet with her. On information and belief, Wayne

never received said copies from Schwartz, and in fact, was utterly derelict in

filing plaintiff's proposed grievances. In fact, plaintiff learned in July 2004, that

Schwartz's son was hired for a position that plaintiff had listed as

a priority preference on plaintiff's job preference form. When Plaintiff

approached another Union official, Harolyn Fritz to complain about Wayne's

derelictions, Fritz merely sent plaintiff back to Wayne. Later, Fritz sent plaintiff a

letter specifically declining, on behalf of UFT, to represent plaintiff, in violation

of its duty of fair representation.

dd.    Plaintiff's union, UFT, utterly failed to assist her in her various problems with the

male student and with her supervisors. Thus, she reluctantly filed a grievance

against her union with the Public Employment Relations Board (PERB). An

Administrative Law Judge with PERB agreed that plaintiff's union should:

represent plaintiff in her outstanding grievances; assign a union representative to

handle her grievances; and give her a good faith basis for not proceeding on other

grievances on her behalf. To date, the UFT has utterly failed to follow any of

these ameliorative measures, and thus, has continued to fail in its duty of fair representation of plaintiff.

12.    Moreover, plaintiff's rights with respect to being free of stigmatizing actions which damage her prospects for gainful employment and upward mobility in her chosen profession, and of being free from arbitrary and capricious governmental actions, are clearly established, and reasonable persons employed by municipal defendants are aware of these rights, or have reasons to be so aware of these rights.

13.    As a further proximate result of defendants' discriminatory, arbitrary, and illegal acts towards plaintiff, plaintiff has suffered a loss of earnings, bonuses and other employment benefits.

14.    As a further proximate result of defendants' illegal actions towards plaintiff, plaintiff has suffered impairment and damage to plaintiff's good name and reputation.

15.    As a further proximate result of defendants' illegal actions towards plaintiff, plaintiff has suffered mental anguish and emotional injury.

16.    As a further proximate result of defendants' illegal actions towards plaintiff, plaintiff has been unable to ameliorate plaintiff's employment situation.

17.    Individual defendant's actions were done with reckless indifference to plaintiff's protected rights, entitling plaintiff to punitive damages as against the individual defendant herein.

V.    <u>CAUSES OF ACTION</u>

<u>FIRST CAUSE OF ACTION</u>

18.    Plaintiff hereby repeats and realleges each allegation in each numbered paragraph above.

19.    By altering the terms, conditions and privileges of plaintiff's municipal employment in violation of her due process and Equal protection rights, while acting under color of state law and pursuant to municipal practice, policy and custom, defendants have violated the Fourteenth Amendment of the United States Constitution as made actionable through 42 U.S.C. Section 1983.

## SECOND CAUSE OF ACTION

20.    Plaintiff hereby repeats and realleges each allegation in each numbered paragraph above.

21.    By altering the terms, conditions and privileges of plaintiff's municipal employment by recklessly undertaking stigmatizing actions which adversely affected plaintiff's ability to be gainfully employed in her chosen profession and/or to seek upward mobility, defendants, acting under color of state law and pursuant to municipal practice, policy and custom, have violated the Liberty Interest Clause of the Fourteenth Amendment as made action under 42 U.S.C. Section 1983.

## THIRD CAUSE OF ACTION

22.    Plaintiff hereby repeats and realleges each allegation in each numbered paragraph above.

23.    By recklessly and intentionally refusing to represent plaintiff, the UFT has failed in its duty of fair representation and thus violated 29 U.S.C. Section 185.

VI.    PRAYER FOR RELIEF

WHEREFORE, plaintiff prays that this Court grant to him judgment containing the following relief:

a.     An award of damages to be determined at the time of trial to compensate plaintiff

for lost financial opportunities, mental anguish, humiliation and embarrassment.

b.     An award of punitive damages to be determined at the time of trial as against

the individual defendant;

c.     An award of reasonable attorney fees and the costs of this action and,

e.     Such other and further relief as this Court may deem just and proper.

Dated: Brooklyn, New York
October 5, 2005

Respectfully Submitted,
Law Offices of Ambrose Wotorson, P.C.

By

Ambrose W. Wotorson (AWW—2412)
26 Court Street, Suite 1811
Brooklyn, New York 11242
718-797-4861